HONORABLE ROYCE C. LAMBERTH, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
**JAN 3 0 2008**
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Docket No.: 07-CR-182 |
| vs. | : | SSN: ___ ____ |
| ROBERT HOWELL PRICE, III | : | Disclosure Date: October 15, 2007 |

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and review the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein
( ) There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____   _____
Prosecuting Attorney              Date

### For the Defendant

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
( ) There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_____   _____
Defendant       Date        Defense Counsel   11/5/07 Date

### NOTICE OF OBLIGATON OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by October 29, 2007, to U.S. Probation Officer Renee Moses-Gregory, telephone number (202) 565-1348, fax number (202) 273-0242.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

FOR THE COURT

By:  Gennine A. Hagar, Chief
     United States Probation Officer

# Richard A. Harpootlian, P.A.

ATTORNEYS AT LAW
P O BOX 1090
1410 LAUREL STREET
COLUMBIA, SOUTH CAROLINA 29202

RICHARD A. HARPOOTLIAN
rah@harpootlianlaw.com

TELEPHONE (803) 252-4848
FACSIMILE (803) 252-4810

October 29, 2007
***VIA FACSIMILE (202-273-0242) & FIRST CLASS MAIL***

Ms. Renee Moses-Gregory
United States Probation Office
United States District Court for the
    District of Columbia
333 Constitution Avenue, N.W., Suite 2800
Washington, DC 20001-1300

        In re:   United States of America v. Robert Howell Price, III
                  Docket No.:  07-CR-182-02

Dear Ms. Moses-Gregory:

Thank you for delivering the Presentence Investigation Report of my client, Robert Howell Price, III. I have reviewed this Report and discussed its contents with Mr. Price. We respectfully submit this letter as Mr. Price's response to the representations and conclusions contained within the Report and our position as to the appropriate Guidelines calculations.

    I.    **Material Allegations**

We believe that though the Report is a generally accurate representation of the events that have led to this case, there are several critical distinctions that should be noted.

First, at all times relevant to this case, Mr. Price was employed as the Vice President of Planning and Development for SPM Columbia, Inc. (hereinafter "SPM"), an affiliated company of SPM Resorts, Inc., a business operated by Price's co-defendant, David Therrell Collier.

1

On May 29, 1997, Collier and Indian Tribe A signed a Letter of Intent to create a joint venture called New River Management and Development Company. The purpose of New River was to manage bingo as well as develop, manage, and buy and sell other commercial properties and facilities on behalf of the Tribe.

On August 11, 1997 SPM and the Indian Tribe A entered into an operating agreement forming New River. On the same day, Indian Tribe A entered into a management contract with New River to provide management services for a bingo hall owned by the Tribe and located in Rock Hill. While New River Management was a joint venture between Indian Tribe A and SPM, Tribe A possessed a controlling 51% interest of the company's stock.

After the creation of New River, Price was named COO of the venture and oversaw the employees that conducted the day-to-day operations of the bingo hall. Paragraph nine of the Report states that Price's duties "included locating and managing employees and contractors at the hall, as well as identifying additional gaming opportunities for Indian Tribe A". Price, however, also sought other economic development opportunities for the Tribe beyond the scope of gaming. Paragraph six describes Mr. Price as "employed… by a joint venture between Indian Tribe A and a business operated by Price's co-defendant." But despite his position as an officer of New River Management, Mr. Price was never actually employed by the venture. His compensation continued to come directly from SPM—the company operated by co-defendant Collier.

After the implementation of the South Carolina Education Lottery and the subsequent impact on the profitability of the Rock Hill bingo hall, Defendant Collier

initially formulated the plan to expand Tribe A's gaming activities to Santee, South Carolina. This was not a joint decision between Collier and Price—as stated in paragraph 11 of the Report. After choosing this particular course of action, Collier then consulted with Mr. Price about the proper implementation of the plan to begin operations in Santee. Part of Collier's plan was to secure political support for the prospective Santee operation and, contrary to the representations of paragraph 18, he alone identified certain officials he deemed critical to the bingo hall's success. After Collier determined which officials would be the focus of the Tribe's support, he then worked with Price to develop the fundraising mechanism that eventually gave rise to this case.

As noted by paragraphs 16 through 23, part of the plan implemented by Collier and Price involved the political contributions at issue. Mr. Price and Collier did cause reimbursement checks to be issued to contributors. Importantly, however, it should be noted that Tribe A was aware and approved of the issuance of these checks.

II.     **Role Assessment**

As shown above, Mr. Price operated in a position subservient to that of co-defendant Collier. Price was employed by Collier's corporation and was subject to his control. Defendant Collier formulated the plan to expand Indian Tribe A's gaming operations to Santee, SC and to facilitate this venture through the cultivation of political support. Mr. Price admits—and has admitted through this process—to participating in the maturation and implementation of Collier's design for the Santee bingo hall and fundraising operation that would potentially contribute to its success. However, because of the inferior position of Mr. Price both in the offensive activity and in the structure of

all ventures between SPM and Indian Tribe A, Mr. Price is less culpable than co-defendant Collier.

### III.     Offense Level Computation

We respectfully disagree with the Report's Offense Level Computation.

First, we believe the Report errs in assigning Mr. Price a base offense level of "8". This base offense level is reached only via a cross-reference of U.S.S.G. § 2B1.1(c)(3) and § 2C1.8(a). However, the Guidelines provide that another section may be applied to the base offense level by reference only if "the conduct set forth in the count of conviction establishes an offense specifically covered by another Guideline…". See U.S.S.G. § 2B1.1(c)(3). Our courts have stated that "this cross-reference is applicable 'only if the conduct alleged in the count of the indictment of which the defendant is convicted establishes the elements of another offense.'" U.S. v. Bah, 439 F.3d 423, 427 (8th Cir.2006); quoting United States v. Genao, 343 F.3d 578, 583 (2d Cir.2003).

In Mr. Price's case, the conduct alleged does not establish the elements of another offense applicable to U.S.S.G. § 2C1.8. 2 U.S.C.A. 437g(d)(1)(a) and 2 U.S.C.A. 441f require that a defendant "knowingly and willfully" commit a violation of federal campaign finance laws in order to be found guilty of that crime. The Congressional history of the Act which led to the codification of this section provides that the "knowingly and willfully" element was intended to limit liability to cases in which "the acts were committed with a knowledge of all the relevant facts and a recognition that the action is prohibited by law." H.R. Rep. No. 94-917 (1976).

In contrast, the offense to which Mr. Price is pleading guilty does not require proof of a "knowingly and willfully" committed criminal act. This Circuit has recently

observed that "the government need not prove that [a defendant] knew her acts to be unlawful; the question whether she could in fact have had such knowledge is therefore irrelevant." U.S. v. Hsia, 176 F.3d 517, 522 (D.C. Cir. 1999). As a result, a guilty plea to "causing false statements" under 2 U.S.C.A. §§ 1801, 02 does not satisfy the "knowingly and willfully" element of the crimes that would make U.S.S.G. § 2C1.8 relevant to Mr. Price's sentencing calculation. It follows that the Base Offense Level of Mr. Price must be the six level calculation contained within U.S.S.G. § 2B1.1, rather than the eight level calculation found by the Report.

The Report also errs by adding six levels to the base level offense based upon the contention (under U.S.S.G. § 2B1.1(b)(1)) that the total value of the "conduit campaign contributions" was between $30,000 and $70,000. In order for this Guideline to be applicable, however, the case must involve actual or intended "loss" which is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense" or "the pecuniary harm that was intended to result from the offense." See U.S.S.G. §2B1.1, n. 3A(i)-(ii). But as paragraph 25 of the Report notes, no victims have been identified "who suffered a monetary loss as a result of defendants' conduct." In fact, no loss exists. Indian Tribe A knowingly sought to contribute the donations giving rise to this charge and budgeted for the donations within its fiscal plans. Thus, in paragraph 30, the Report mistakenly assigns Mr. Price the six-level elevation from his base offense level.

Next, paragraph 31 of the Report wrongly increases Mr. Price's computation by two levels because "the defendant engaged in 30 or more illegal transactions" (relying upon U.S.S.G. § 2C1.8). As shown above, the provisions of § 2C1.8 are inapplicable to

this case because the allegations of the indictment do not satisfy the elements of the crimes applicable to that guideline.

Even if § 2C1.8 does apply, however, no increase would apply to Mr. Price's computation because he has not "engaged in 30 or more illegal transactions" as defined within the guideline. The introduction to the 2003 Guidelines explains that "this enhancement could not be applied on the basis of illegal transactions engaged in by a codefendant for whose conduct the defendant would otherwise be accountable under U.S.S.G. § 1B1.3(a)(1)(b)." Hutchinson, "Highlights of the 2003 Amendments," Federal Sentencing Guidelines Manual (2003 ed.), at XIX, n. 49. Thus, while Mr. Price may be criminally culpable for the transactions that both he and co-defendant Collier undertook, his co-defendant's transactions cannot be employed to enhance Mr. Price's offense level under the guise of § 2C1.8. It is our belief that the number of transactions for which Mr. Price is potentially liable under Guideline § 2C1.8 numbers less than thirty.

We appreciate the Report's notation of and agree with a downward adjustment to Mr. Price's total offense level due to his acceptance of responsibility and cooperation with the government's investigation and prosecution under U.S.S.G. § 3E1.1(a). However, because we believe Mr. Price's true adjusted offense level to be less than 16, he would only be entitled to a two point adjustment rather than the three awarded in paragraph 37 of the Report.

Utilizing the logic described above, we argue that Mr. Price's Offense Level Computation would more appropriately read as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2B1.1) | 6 |
| Acceptance of Responsibility | -2 |

(U.S.S.G. § 3E1.1(a))

Total                                    4

**IV.     Employment and Financial Status**

Paragraphs 65 and 66 of the Report portray a point of disagreement about the end of Mr. Price's employment with SPM. Though SPM officials continue to maintain that Mr. Price "was not terminated," the greater corporation and its related companies possessed positions Mr. Price could have filled had SPM officials chosen to do so. In fact, at least one former employee was hired by SPM Resorts, Inc. as their Vice President of Gaming Operations, a position whose responsibilities were similar to Mr. Price's SPM responsibilities. In early 2007, Mr. Price spoke with Collier about the possibility of employment and was assured such a position would be found. SPM chose not to find alternative employment for Mr. Price, however; thus his position with the company was, indeed, terminated.

Paragraph 78 notes that Mr. Price possesses an ownership interest in Special Properties and Carolina Hospitality and Entertainment Company. Special Properties closed in 2007 and Mr. Price relinquished his 7% share in the stock of Carolina Hospitality on October 25, 2007.

**V.     Minor Corrections**

There are some minor and relatively insubstantial corrections that should be noted for posterity's sake. First, some locations within the report state Mr. Price's name as "David Howell Price, III." These should be amended to state "Robert Howell Price, III." The report also refers to Mr. Price's wife as "Mrs. Eidson-Price". Mrs. Price, however, does not include her maiden name within her official signature. Paragraph 49 should state

that the Prices relocated to Raleigh and Charlotte, North Carolina—rather than South Carolina.

### VI.   U.S.S.G. §5K1.1 and Rule 35, F.R.Cr.P. Downward Departure

We also respectfully disagree with Paragraph 100 of the Report in which the Government states that no information exists justifying a downward departure from the prescribed sentencing guidelines. We believe that the nature and circumstances of the offense, as well as the history and characteristics of the Defendant warrant a lesser sentence than that suggested by the Guidelines.

Furthermore, it is important to note the substantial cooperation and assistance Mr. Price provided to the Government in its investigation and prosecution of this matter, all of which also weighs in favor of a downward departure from the Guidelines.

If you would like to discuss this further or require additional information, please do not hesitate to contact me.

With warmest personal regards, I am

                                              Sincerely,

                                              Richard A. Harpootlian
                                              Attorney for Robert Howell Price, III

RAH:hal